UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LASHAUN Y. CARTER,
individually and on behalf of
all others similarly situated
who consent to their
inclusion in a collective action,

    Plaintiffs,

v.

DOLL HOUSE II, INC. d/b/a
STILETTOS GENTLEMEN'S
CLUB, et al.,

    Defendants.

CIVIL ACTION NO.

1:14-CV-1097-MHS

## ORDER

Before the Court is defendants' motion for an order compelling arbitration on an individual basis, striking class allegations, and staying or dismissing this action. For the reasons below, the Court grants in part and denies in part defendants' motion.

Background

On April 12, 2014, Plaintiff Lashaun Y. Carter, filed a putative collective action against defendants, alleging violations of the Fair Labor Standards Act (FLSA). In the complaint she alleged that defendants violated

the FLSA by improperly designating their dancers as independent contractors. As allowed by the FLSA, Carter filed her putative collective action on behalf of herself and other similarly-situated Stilettos' dancers. The complaint urged the Court to issue notice to all similarly-situated employees.

So far, Qiyana M. Johnson, Arlesha M. Jones, Keondra R. Brown, and Candice Howard have joined this action. All five plaintiffs worked as dancers at the Stilettos Gentlemen's Club during the following times: (1) Carter – since early September 2012; (2) Johnson – from mid-April 2013 until early March 2014; (3) Jones – from September 2012 through September 2013; (4) Brown – from mid-December 2012 until January 17, 2014; and (5) Howard – from January 2013 until April 24, 2014.

In October 2013, Carter, Johnson, and likely two other opt-in plaintiffs signed an independent contractor agreement (October Agreement). In relevant part, the October Agreement provided:

> IT IS UNDERSTOOD AND AGREED that Lashaun Carter is <u>not</u> an employee of Stilettos and that Stilettos is not responsible for providing insurance or supplies. It is further agreed and understood that any dispute regarding this contract/agreement shall be submitted to arbitration in lieu of filing an action in any court of law.

2

Doc. 4, Ex. 1 (emphasis in original).

In early April 2014, Carter contacted her current counsel. On April 12, 2014, Carter's counsel hand-delivered a letter to defendants, informing them that a lawsuit alleging FLSA violations would be filed against them. He also expressed a concern about "an unusual meeting" that defendants had scheduled for Saturday, April 12. Doc. 11 at 3. Carter's counsel believed that defendants would try to force the dancers into an arbitration or a class action waiver agreement, which, according to counsel, would constitute retaliation. Carter filed this action on April 12, 2014.

The April 12 meeting was postponed until April 26. On April 26, 2014, Stilettos' management informed dancers that they would have to accept a new Arbitration Agreement (April Agreement). Carter, with an other thirty-two dancers, attended the meeting. In relevant part, the April Agreement provided:

> 1. Any "Covered Claim" as defined in item 2 that you may have against DOLL HOUSE II, INC. ("STILETTOS") (or its owners, directors, officers, managers, employees or agents) or that STILETTOS may have against you shall be submitted and determined by binding arbitration . . . .
>
> 2. "Covered Claims" include, but are not limited to, claims that occur or accrue under . . . the (FLSA). . . .

3

3. STILETTOS and you are required to bring all claims subject to arbitration in one arbitration proceeding. . . .

It is the intention of the Arbitration Agreement that you and STILETTOS are agreeing to arbitrate claims on an individual basis. Unless required by law, the arbitrator has no authority to and shall not consolidate "Covered Claims" of different employees into one proceeding, nor shall the arbitrator have the authority to hear an arbitration as a class or collective action . . . .

. . . .

6. Except as expressly provided for above, neither STILETTOS nor you can file a civil lawsuit in court against the other party relating to Covered Claims. If either STILETTOS or you file a lawsuit in court to resolve Covered Claims subject to arbitration, both you and STILETTOS agree that the court shall dismiss the lawsuit and compel the Covered Claim(s) to be resolved through arbitration.

. . . .

14. <u>AS TO ENTERTAINERS OR OTHER INDEPENDENT CONTRACTORS OF STILETTOS</u>: THE SUBMISSION OF AN APPLICATION, AUDITION AS AN ENTERTAINER, ACCEPTANCE AS AN ENTERTAINER OR YOUR CONTINUING TO WORK AS AN ENTERTAINER AT STILETTOS, SHALL BE DEEMED TO BE ACCEPTANCE OF THIS ARBITRATION AGREEMENT. NO SIGNATURE SHALL BE REQUIRED FOR THE AGREEMENT TO BE APPLICABLE. THE MUTUAL OBLIGATIONS SET FORTH IN THIS AGREEMENT SHALL CONSTITUTE A CONTRACT BETWEEN YOU AND STILETTOS BUT SHALL NOT CHANGE YOUR AT-WILL RELATIONSHIP OR ANY TERM OF ANY OTHER CONTRACT OR AGREEMENT BETWEEN STILETTOS AND YOU. THIS AGREEMENT SHALL

CONSTITUTE THE ENTIRE AGREEMENT BETWEEN YOU AND STILETTOS FOR THE RESOLUTION OF COVERED CLAIMS.

Doc. 4, Ex. 2 (emphasis in original).

Parties' Contentions

Defendants argue that plaintiffs' claims are subject to arbitration for the following reasons. First, the October Agreement is a binding contract. Second, the April Agreement is enforceable as to Carter on an individual basis since the "offer" and "consideration" elements are met, even though she has not signed the agreement. Defendants contend that because Carter has continued to work at Stilettos after the April 26 meeting, she accepted the terms of the April Agreement. In addition, defendants claim that because the April Agreement contained a collective action waiver, Carter must submit her claims to individual arbitration. Finally, defendants contend that this Court should dismiss or stay the action pending resolution of the arbitral proceedings.

Plaintiffs respond in opposition to defendants' motion. They claim that this Court should deny the motion with regard to all claims arising prior to October 2013, because the October Agreement is not retroactive to earlier-accruing claims. Further, the October Agreement does not apply to opt-in

plaintiff Jones, since she was no longer working at Stilettos in October of 2013. Thus, plaintiffs argue, the Court should refer Carter and other opt-in plaintiffs to arbitration, excluding Jones, only with respect to the claims arising after October 1, 2013. Further, plaintiffs claim that approximately 200 dancers have worked at Stilettos since September 2012, and many of them signed no arbitration agreement. In addition, plaintiffs argue that the April Agreement will ultimately be found substantively and procedurally unconscionable but ask the Court to withhold any judgment as to its enforceability until a significant number of current Stilettos dancers who attended the April meeting have joined the action. They also claim that the April Agreement is not enforceable against Carter because her counsel informed defendants that she would not accept any arbitration agreement. Plaintiffs contend that Carter has not accepted the April Agreement and defendants have no right to condition her continued employment on the waiver of her right to sue. In support, plaintiffs rely on *Billingsley v. Citi Trends, Inc.*, Case No. 13-12561, 2014 WL 1199501 (11th Cir. March 25, 2014). Finally, plaintiffs contend that the retroactive application of the April Agreement against other Stilettos' dancers is not ripe for review because so far, none of them have opted in to this litigation.

Defendants reply and argue that plaintiffs failed to show that the April Agreement is procedurally and substantively unconscionable and thus unenforceable. Defendants also claim that plaintiffs have no proof that they knew about Carter's impending lawsuit when the meeting for April 12, 2014, was scheduled. Defendants contend that their counsel advised them to implement the April Agreement because there were several lawsuits filed against other Atlanta-area gentlemen's clubs for overtime and minimum wage violations. Further, they attempt to distinguish *Billingsley* and, among other things, argue that the court misapplied Georgia law. Defendants also contend that the October Agreement applies retroactively.

Discussion

A. FLSA

Congress passed the FLSA to protect workers from overbearing practices of employers who had greatly unequal bargaining power over their workers. *See Roland Elec. Co. v. Walling*, 326 U.S. 657, 668 n.5 (1946). Congress has expressed a policy that FLSA plaintiffs should have the opportunity to proceed collectively. 29 U.S.C. § 216(b). To join an FLSA collective action, each party plaintiff must consent in writing to become a plaintiff in the case. *Id.* This is referred to as opting-in to the action. The

FLSA's collective action mechanism (1) reduces the burden on low wage employees through the pooling of resources and (2) allows for the efficient resolution of common issues of law and fact that arise from the same illegal conduct. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264–65 (11th Cir. 2008).

Although collective and class actions "serve an important function in our system of civil justice," collective and class actions present "opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981) (discussing Fed.R.Civ.P. 23 class actions); *see Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (extending reasoning of *Gulf Oil* to collective actions). In particular, the benefits of the FLSA's collection action mechanism "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. "Because formal notice to putative FLSA collective members is provided *after* conditional certification has been approved by the district court, pre-certification, *ex parte* communication with putative FLSA collective members about the case has an inherent risk of

prejudice and opportunities for impropriety." *Billingsley*, 2014 WL 1199501, at *6 (emphasis in original).

### B. District Court's Managerial Powers

"To avoid such prejudice and impropriety and to ensure the potential plaintiffs have a *fair* opportunity to opt-in to a FLSA collective action, the district court has the discretion to facilitate notice to potential plaintiffs and broad authority to exercise control over the collective action and to govern the conduct of counsel and parties in the collective action." *Id.* at *6 (emphasis added) (internal punctuation marks and citations omitted). "A district court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to prevent confusion and *unfairness* concerning an FLSA collective action." *Id.* (emphasis added) (citation omitted). It also includes "authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann–La Roche*, 493 U.S. at 170 (citing Fed.R.Civ.P. 83). Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is

9

accomplished in an efficient and proper way." *Id.* at 170–71. "The district court also has the responsibility to insure that *all parties act fairly* while the court decides whether and how the action will move forward under the FLSA." *Billingsley*, 2014 WL 1199501, at *7 (emphasis added).

The Court's interest in managing collective actions in an orderly fashion is reinforced by Rule 83(b), which allows courts to "regulate their practice in any manner consistent with" federal or local rules. Fed.R.Civ.P. 83(b). "Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit." *Hoffmann–La Roche*, 493 U.S. at 172 (citations omitted). Consistent with Rule 83, "courts traditionally have exercised considerable authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 172–73 (citations and quotation marks omitted).

C. Arbitration Agreement Enforceability

The Court must apply a three-prong test in order to determine whether arbitration should be compelled. The Court must assess whether: (1) there is a valid written agreement to arbitrate; (2) the issue sought to be arbitrated is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims. *Lomax v. Woodmen of World Life*

10

*Ins. Soc'y*, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002). "Arbitration is simply a matter of contract." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Accordingly, when determining whether an arbitration agreement exists, state contract law governs. Under Georgia contract law, "a definite offer and complete acceptance, for consideration, create a binding contract." *Moreno v. Strickland*, 567 S.E. 2d 90, 92 (Ga. Ct. App. 2002) (citations and punctuation omitted).

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). However, the Eleventh Circuit has held that "[b]ecause arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004). Moreover, "if the parties had intended retroactivity, they would have explicitly said so." *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1119 (11th Cir. 2009) (abrogated on other grounds); *see also*

*Azevedo v. Carnival Corp.,* 08-20518-CIV, 2008 WL 2261195, at * 7–8 (S.D. Fla. 2008) (noting that while other circuits hold that broad arbitration clauses could be applied to disputes that arose prior to the arbitration contract, that is not the rule in the Eleventh Circuit). Accordingly, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Id.* (citations omitted).

### D. The October Agreement

Plaintiffs do not dispute that the October Agreement is valid and enforceable against Carter and Johnson. Plaintiffs also state that all other opt-in plaintiffs, except for Jones, likely entered into the October Agreement with defendants. However, plaintiffs contend that they cannot be required to arbitrate the claims arising prior to October 2013. Thus, the questions before this Court are whether the issue sought to be arbitrated is arbitrable under the October Agreement, and whether this Agreement covers claims arising before October 1, 2013. *Lomax,* 228 F. Supp. 2d at 1362.

The October Agreement provides that plaintiffs are not employees but independent contractors. In addition, it contains a provision that "any dispute regarding this contract/agreement shall be submitted to arbitration

12

. . . ." Doc. 4, Ex. 1. The core of plaintiffs' claims in the current action is that they were employees rather than independent contractors, and accordingly, were covered by the FLSA. Doc. 1 at 5–6 ("Defendants have at all times relevant falsely classified the 'dancers' . . . employed in the club as independent contractors."). Thus, the Court concludes that this "type of controversy is" arbitrable. *Howsam*, 123 S. Ct. at 592. However, the October Agreement does not contain any indication that it will be applied retroactively. Thus, plaintiffs, who signed the October Agreement must arbitrate only the claims that accrued after the date they signed the Agreement. *Klay*, 389 F.3d at 1203; *Thomas*, 573 F.3d at 1119. The Court is mindful that an arbitrator may reach a different conclusion than this Court on the same issue, i.e., whether plaintiffs were or are employees or independent contractors. However, this Court "cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." *Klay*, 389 F.3d at 1203.

B. The April Agreement

There is no dispute that the current action was filed on April 12, 2014 and Carter's counsel informed defendants about the impending lawsuit. Doc. 1; Doc. 11, Ex. 2. The parties also do not dispute that the April Agreement

was announced on April 26, 2014, less than three weeks after this action had been filed. Given the timing of the Agreement (post-filing, pre-certification), its immediate implementation (the Agreement applies if a dancer continues to work at Stilettos), and its repressive terms (retroactive application, waiver of claims not brought to arbitration, and a prohibition of collective action), the Court finds that it has been designed to unfairly thwart Carter's and potential opt-in plaintiffs' rights. The April Agreement by its terms would directly affect this lawsuit. Thus, to "prevent confusion and *unfairness*" and "ensure that the potential plaintiffs have a *fair* opportunity to opt-in to [this] FLSA collective action," the Court will exercise its managerial powers. *Billingsley*, 2014 WL 1199501, at *6 (emphases added) (citations omitted). Accordingly, the Court refuses to enforce the April Agreement in the current action. *Id.* ("District courts' corrective actions have included refusal to enforce arbitration agreements instituted through improper means and where the timing of the execution of those agreements was similar to the post-filing, pre-certification timing . . . .") (citations omitted).

Conclusion

In conclusion, the Court GRANTS IN PART and DENIES IN PART

defendants' motion [#4] as follows. The Court GRANTS defendants' motion to compel plaintiffs who signed the Independent Contractor Agreement to arbitrate their claims accruing after the date they signed the Agreement and ORDERS those plaintiffs and defendants to proceed to arbitration of those claims. This action shall proceed with respect to the claims of those plaintiffs accruing before the date they signed the Independent Contractor Agreement, as will as with respect to the claims of plaintiffs who did not sign the Agreement. The Court DENIES defendants' motion for an order compelling arbitration on an individual basis, striking class allegations, and staying or dismissing the case.

IT IS SO ORDERED, this ____ day of July, 2014.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

AO 72A
(Rev.8/82)